# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 2, 2021

162482

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

ROUCH WORLD, LLC, and UPROOTED
ELECTROLYSIS, LLC,
   Plaintiffs-Appellees,

v

DEPARTMENT OF CIVIL RIGHTS and
DIRECTOR OF THE DEPARTMENT OF
CIVIL RIGHTS,
   Defendants-Appellants.

SC: 162482
COA: 355868
Ct of Claims: 20-000145-MZ

_____/

The application for leave to appeal prior to decision by the Court of Appeals is considered, and it is GRANTED, limited to the issue whether the prohibition on discrimination "because of . . . sex" in the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, applies to discrimination based on sexual orientation. The appellants' brief and appendix shall be filed by October 25, 2021, with no extensions except upon a showing of good cause. The time for filing the remaining briefs shall be as set forth in MCR 7.312(E). The time allowed for oral argument shall be 20 minutes for each side. MCR 7.314(B)(1).

The American Civil Liberties Union of Michigan, the American Civil Liberties Union, Affirmations LGBTQ+ Community Center, Equality Michigan, Freedom for All Americans, Human Rights Campaign, LGBT Detroit, National Center for Lesbian Rights, OutCenter of Southwest Michigan, OutFront Kalamazoo, Ruth Ellis Center, Southern Poverty Law Center, Stand With Trans, and Trans Sistas of Color Project are invited to file briefs amicus curiae. Other persons or groups interested in the determination of the issue presented in this case may move the Court for permission to file briefs amicus curiae.

CLEMENT, J. (*dissenting*).

One year ago, we denied a bypass application in which a branch of state government argued that a dispute over its institutional prerogatives was a vehicle by which the civil rights of all Michigan residents could indirectly be litigated. In light of

the Governor's executive orders under 1945 PA 302 responding to the COVID-19 pandemic, the Legislature challenged the constitutionality of 1945 PA 302 as an unconstitutional delegation of legislative authority to the executive. When we denied the Legislature's bypass application seeking to expedite appellate review of the question, I noted that "the Legislature is not litigating the civil liberties of all Michiganders." *House of Representatives v Governor*, 505 Mich 1142, 1143 (2020) (CLEMENT, J., concurring). This was in the face of the fact that the case raised compelling questions that *implicated* the civil liberties of all Michiganders—just as this one does. We should deny this bypass application just like we denied that one.

First, I consider the question of whether we *can* take this case. As I noted a year ago, "whether [our] rules have been satisfied is seemingly of its own jurisdictional and constitutional significance." *Id.* Our rules require that, to grant a bypass application, the appellant "must show" either that "delay in final adjudication is likely to cause substantial harm" or that "the appeal is from a ruling that . . . any . . . action of the . . . executive branch[] of state government is invalid[.]" MCR 7.305(B)(4)(a) and (b). I do not believe the Department of Civil Rights can satisfy either requirement, which should preclude us from granting this bypass application.

The question under MCR 7.305(B)(4)(a) is whether the department can show that "delay in final adjudication is likely to cause substantial harm." Last year's reasoning makes clear that the department cannot satisfy this requirement. The department argues that "[d]elaying final adjudication would work 'substantial harm,' as many Michigan citizens will be unprotected by the law" and "others will be left in a state of uncertainty as to how to apply the challenged provision of the [Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.]." This is strikingly similar to the Legislature's argument a year ago that " 'Michiganders . . . are living under a cloud of ambiguity' given the debate over whether the Governor's executive orders responding to the COVID-19 pandemic are actually legal." Then, I rejected that argument because that case was "not a class action filed on behalf of all Michiganders to litigate their civil liberties—it [was] a suit filed by the Legislature asserting that certain of its institutional prerogatives ha[d] been infringed by the Governor's actions." *House of Representatives*, 505 Mich at 1143. The same point holds now. The instant case is, as a matter of form, a dispute about what institutional prerogatives the Department of Civil Rights enjoys under the Civil Rights Act—what sorts of actions qualify as discrimination it is empowered to investigate. A year ago, I said that "[t]he Legislature show[ed] no substantial harm *to the Legislature* caused by going through the ordinary appellate process" because "[a]s an institution, it [was] exactly as free to enact legislation . . . as it was before any of the Governor's executive orders were entered." *Id.* The same can be said of the department—it cannot show substantial harm *to the department* caused by going through the ordinary appellate process, and as an institution, it is exactly as free to exercise the established authority it possesses under the Civil Rights Act.

The question under MCR 7.305(B)(4)(b) is whether "the appeal is from a ruling that a provision of the Michigan Constitution, a Michigan statute, a rule or regulation included in the Michigan Administrative Code, or any other action of the legislative or executive branches of state government is invalid." It is indisputable that last year's reasoning under MCR 7.305(B)(4)(b) is not applicable, because the procedural posture of the cases is different, but it remains the case that the department cannot satisfy the rule's text—and, indeed, the department makes essentially no argument that it can satisfy this standard. The Court of Claims enjoined the department from investigating an allegation of discrimination on the basis of sexual orientation because it held that the Civil Rights Act did not prohibit discrimination on this basis. The investigation the department was enjoined from performing was certainly not "a provision of the Michigan Constitution, a Michigan statute, [or] a rule or regulation included in the Michigan Administrative Code," so to come within the terms of MCR 7.305(B)(4)(b), it must fall within the catchall of being "any other action of the . . . executive branch[] of state government." We have held that the *ejusdem generis* canon of interpretation guides how catchall provisions of this sort are construed. It provides that when "general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." *People v Smith*, 393 Mich 432, 436 (1975). Or, in somewhat crisper prose:

> The *ejusdem generis* canon applies when a drafter has tacked on a catchall phrase at the end of an enumeration of specifics, as in *dogs, horses, cattle, and other animals*. Does the phrase *and other animals* refer to wild animals as well as domesticated ones? What about a horsefly? What about protozoa? Are we to read *other animals* here as meaning *other similar animals*? The principle of *ejusdem generis* essentially says just that: It implies the addition of *similar* after the word *other*. [Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 199.]

In other words, when the rule refers to "any other action of the . . . executive branch[] of state government," it is not permitted to argue that " 'any' means 'any.' " Rather, *ejusdem generis* implies an unstated insertion of "similar" after "other"—"any other *similar* action of the . . . executive branch[] of state government."

Here, the specific examples—"a provision of the Michigan Constitution, a Michigan statute, [or] a rule or regulation included in the Michigan Administrative Code"—are all legislative or quasi-legislative actions. The investigation at issue is not at all legislative; it is an *enforcement* proceeding, comparable to an administrative safety inspection or licensing review. This is further emphasized by the rule's requirement that the appeal be from a ruling that an "action of the . . . executive branch[]" is "invalid." "Invalid" is defined as "[n]ot legally or factually valid; null: *an invalid license*," and

"valid" is defined as "[h]aving legal force; effective or binding: *a valid title*." *The American Heritage Dictionary of the English Language* (5th ed). An investigation cannot be meaningfully described as "null," "[h]aving legal force," "effective," or "binding"; it is an inquiry that has no validity or invalidity as such. Of course, the catchall must refer to something, and it is clearly applicable to examples such as executive reorganization orders entered under Const 1963, art 5, § 2, or executive orders authorized by statute. But I maintain that it does not apply to the investigation at issue.

Second, even if the rule were satisfied, I do not think it would be prudent for this Court to grant this bypass application. As I said a year ago, "[f]urther appellate review and development of the arguments will only assist this Court in reaching the best possible answers." *House of Representatives*, 505 Mich at 1146. Given that "this case presents extremely significant legal issues that affect the lives of everyone living in Michigan today," I believe we should deny the bypass application, "*because* I believe that a case this important deserves full and thorough appellate consideration." *Id*. at 1142 (BERNSTEIN, J., concurring). "Cases of the ultimate magnitude . . . necessitate the complete and comprehensive consideration that our judicial process avails." *Id*. "Because I believe the Court neither can nor should review this case before the Court of Appeals does," *id*. at 1143 (CLEMENT, J., concurring), I dissent from the Court's order granting this bypass application.

ZAHRA and VIVIANO, JJ., would deny the application for leave prior to decision by the Court of Appeals.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 2, 2021

b0629

Clerk